## ESTATE OF S. B. KIEFFER, DECEASED.

### APPEAL BY ANNIE BUCHER FROM THE ORPHANS' COURT OF CUMBERLAND COUNTY.

Argued April 29, 1890—Decided October 6, 1890.

Where a conveyance is made to two persons as grantees, there is a presumption, in the absence of an express agreement otherwise, that each one takes an undivided moiety of the property; and, in such case, if either grantee has furnished more than one half the purchase money, the other is indebted to him in an amount necessary to equalize their respective investments.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 275 January Term 1890, Sup. Ct.; court below, number and term not given.

On May 14, 1889, Catharine E. Kieffer, administratrix of S. B. Kieffer, deceased, filed her first and final account, which was referred to *Mr. Duncan M. Graham*, as auditor, to report a distribution.

At the hearing before the auditor, Mrs. Annie Bucher, the sister-in-law of the decedent, presented an agreement under seal, executed by the decedent and herself, which was as follows:

" Whereas, Dr. S. B. Kieffer and Mrs Annie Bucher are the owners of the house and lot of ground situate in Carlisle, Pa., purchased by them from John H. Wolf and wife and particularly mentioned and described by said Wolf and wife in their deed to said Dr. S. B. Kieffer and Mrs. Annie Bucher, dated the 10th day of October, A. D. 1884, and recorded . . . . . ; and said grantees, being desirous of fixing the amount of interest of said Mrs. Annie Bucher in the said property, which has been greatly enlarged and improved since their purchase, and also being desirous of fixing a sum upon which interest shall be semi-annually paid by the said Dr. S. B. Kieffer to said Mrs. Annie Bucher, and also such instalments as she will be willing to receive from said Dr. S. B. Kieffer in order to pay and reduce the amount upon which he pays interest, as well as to fix the price and payments at which he may elect to purchase and pay for said Mrs. Bucher's interest in said property: Now, this agreement witnesseth, That it is hereby covenanted and agreed by and between the said Dr. S. B. Kieffer and Mrs. Annie Bucher that the interest, share or purpart of said Mrs. Annie Bucher, in the aforesaid described and improved lot of ground conveyed by the said John H. Wolf and wife to the said contracting parties, shall be and is now fixed at five thousand dollars; and, inasmuch as the said premises are occupied by the family of the said Dr. S. B. Kieffer, and by the said Mrs. Annie Bucher, her brother Henry and sister Emma, in common, the said Dr. S. B. Kieffer hereby agrees to pay to the said Mrs. Annie Bucher, her heirs or assigns, the interest on three thousand dollars, semi-annually, regularly and promptly, commencing on the 1st day of January, 1886; and if the said S. B. Kieffer shall at any time elect to pay the said Mrs. Annie Bucher the said sum of three thousand dollars, or any part of it, in payments of not less than three hundred dollars at a time,

the said Mrs. Annie Bucher agrees to receive the same, and the interest on each payment as made shall cease and determine, and each payment shall be so much paid on account of the purchase money for the said Mrs. Annie Bucher's interest or estate in the aforesaid property; and when the valuation of five thousand dollars is paid to her or her executor, administrator or assigns, she hereby agrees to execute and deliver a deed in fee-simple to the said Dr. S. B. Kieffer, his heirs or assigns, for her whole estate or interest in the said property. The said Dr. S. B. Kieffer hereby agrees to pay all the taxes assessed upon the whole of said property, and all water and gas bills which may be charged upon it.

"In witness whereof we have hereunto set our hands and seals this      day of December, 1885."

On the back of the agreement was indorsed an unsigned memorandum, as follows:

"Mrs. Annie Bucher having withdrawn five hundred dollars of the three thousand dollar fund upon which Dr. S. B. Kieffer under this agreement agrees to pay to her the annual interest, the parties to said agreement now change and alter the same so as to reduce that sum of three thousand dollars where stated on the second page, on the 26th line of it, to twenty-five hundred dollars instead of three thousand dollars; and the said Dr. S. B. Kieffer covenants and agrees to pay to Mrs. Annie Bucher interest on the sum of twenty-five hundred dollars as is stated in the body of the said agreement, and in all other respects the agreement to remain unchanged.

"Witness our hands and seals this second day of April, 1886.

"Witness:                                      [Seal.]"
                                               "[Seal.]"

The claimant, with the foregoing documentary evidence, proved by witnesses that about the time of the purchase of the Wolf property, on October 10, 1884, for the consideration of $4,500, she paid over to Dr. Kieffer $5,000, which had been collected for her from a life insurance company on a policy upon the life of her husband, then deceased. It was conceded that $500 had been repaid to her, and the balance, to wit, $4,500, with interest, she claimed against the estate of the decedent as a loan. It also appeared that in April, 1886, Dr. Kieffer had mortgaged his undivided one half interest in the

Opinion of Court below.

property to Emma C. Thompson, for $1,500; and, his estate being insolvent at his death, his one half interest in the property had been sold by the accountant at an Orphans' Court sale for the payment of debts, and Mrs. Bucher became the purchaser thereof for $1,700.

The auditor, upon objection made by other creditors of the estate, disallowed the claim of Mrs. Bucher, on the ground that the agreement in evidence established merely an option in Dr. Kieffer to purchase the claimant's interest in the property at a fixed price, which option he had never exercised; and he reported accordingly.

Exceptions filed by the claimant to the auditor's report having been argued, the court, SADLER, P. J., on January 1, 1889, filed the following opinion:

The agreement between the decedent and Mrs. Bucher of December, 1885, was for the expressed purpose of fixing the amount of interest of Mrs. Bucher in the house and lot of which they were joint owners, and also to fix the sum at which he, Dr. Kieffer, might purchase her interest, and the sum he should pay her annually by reason of her interest being in excess of his. The option to purchase was not exercised. That Mrs. Bucher contributed to the purchase and improvement of the property occupied by them a much larger sum than Dr. Kieffer, I am well satisfied; but I think that it was intended that she should be treated as owning more than an undivided half of the property by reason thereof, rather than his creditor. The interest of Dr. Kieffer was not so large as hers; what it was, was sold; no more could be disposed of by his administrator. The auditor was right in refusing to allow the claim of $4,500, made by Mrs. Bucher.

—A formal decree having been signed confirming the distribution reported by the auditor, the claimant took this appeal, specifying that the court erred in " dismissing the exception to the auditor's report, and in rejecting the claim of Mrs. Annie Bucher for $4,500."

*Mr. A. B. Sharpe* and *Mr. S. Hepburn*, for the appellant.

*Mr. E. W. Biddle* and *Mr. J. W. Wetzel*, for the appellee.

OPINION, MR. JUSTICE STERRETT:

This contention involves the construction of the nondescript paper given in evidence by appellant, and in regard to the meaning of which learned counsel differ so widely.

It appears from the evidence that in October, 1884, John H. Wolf and wife conveyed to appellant and her brother-in-law, Dr. S. B. Kieffer, since deceased, a lot of ground in the borough of Carlisle, for the consideration of $4,500. This is doubtless the same property that is referred to in the preamble to the paper in question. In the absence of any evidence to the contrary, the presumption is that the grantees, named in the deed of Wolf and wife, each acquired title to an undivided moiety of the lot described therein; and that presumption is strengthened by the fact that in April, 1886, Dr. Kieffer made a mortgage of his undivided half of same lot to Emma C. Thompson as security for $1,500. In 1888, after the decease of Dr. Kieffer, his undivided moiety of the property was sold by his administratrix, under an order of the Orphans' Court, and conveyed to appellant for the consideration of $1,700. It was also shown that appellant, in 1884, furnished the sum of $5,000, for the purpose of purchasing and improving the property. It does not appear how much or whether anything was furnished by Dr. Kieffer. If the sum of $5,000 paid by appellant was more than one half of the amount expended in the purchase and improvement of the property held by them as tenants in common, as it doubtless was, it would follow that Dr. Kieffer was indebted to appellant in an amount necessary to equalize their respective investments.

Considering the paper referred to in the light of the facts and circumstances which appear to have been connected with the acquisition and ownership of the property to which it relates, we are of opinion that it was intended by the parties thereto to specify, first, the amount of appellant's contribution to the purchase of the joint property; second, the amount necessary to be paid by Dr. Kieffer in order to equalize their respective investments therein; and, third, to secure to him the option of purchasing appellant's undivided half interest in the property, by paying her the amount she had expended in the purchase and improvement of the property. The paper accordingly declares that the interest of appellant " in the aforesaid de-

Opinion of the Court.

scribed and improved lot of ground, conveyed by the said John H. Wolf and wife to the said contracting parties, shall be and is now fixed at five thousand dollars." This was not intended as a declaration that appellant was entitled to either more or less than an undivided moiety of the property, but merely that she had contributed that sum to the purchase and improvement thereof. The agreement also provides that Dr. Kieffer shall pay appellant "the interest on three thousand dollars, . . . . commencing on the 1st day of January, 1886," and if at any time he wishes to pay her the said sum of $3,000, or any part thereof, in payments of not less than $300, at any one time, she shall accept the same, and thereupon interest on the amount so paid shall cease, etc. It does not appear how the sum of $3,000 is made up, but it is evidently treated as an indebtedness by Dr. Kieffer to appellant, which he has a right to pay and she is bound to receive in instalments of not less than $300 each. It cannot possibly refer to anything else than an item of indebtedness, the sum which he is required to pay in order to equalize their respective investments in the property. It is conceded that he did pay her $500 on account, and thereby reduced the amount to $2,500. The sum thus paid on account is doubtless the same that is mentioned in the unsigned indorsement which appears on the paper in question. The option to purchase appellant's interest in the property for $5,000 was never exercised by Dr. Kieffer, and is therefore not an element in this case.

The legitimate inference from all this is, that at the time of his death, in 1887, Dr. Kieffer was indebted to appellant in the sum of $2,500, with arrears of interest, for moneys advanced by her over and above her half or share of the purchase money and costs of improvement; and, as a creditor of his estate to that extent, there appears to be no good reason why she should not be permitted to participate in the fund for distribution.

Decree reversed; and it is ordered that the record be remitted with instructions to distribute the fund in accordance with the foregoing opinion.